**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1743
_____

STRATTON PEAY,
Appellant

v.

SUPT. J. FISHER; L. OLIVER; DEPUTY J. WHITESEL;
CAP'T A. GOSS; SGT. CRUM; SGT. HENRY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-15-cv-00345 )
District Judge:  Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2018
Before:  GREENAWAY, JR., BIBAS and ROTH, Circuit Judges

(Opinion filed: February 12, 2019)
_____

OPINION[*]
_____

PER CURIAM

Stratton Peay, proceeding pro se, appeals from the District Court's order granting

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

summary judgment in favor of the defendants in this civil rights case. For the following reasons, we will affirm.

I.

Peay is a Pennsylvania prisoner currently serving a life sentence for his 1999 conviction for third-degree murder. In February 2015, Peay commenced this action under 42 U.S.C. § 1983 alleging that the defendants—six prison officials and staff members at the Smithfield State Correctional Institution—had violated his constitutional rights in several respects. These defendants were: Jon Fisher, the SCI-Smithfield Superintendent; Jay Whitesel, the Deputy Superintendent for Centralized Services; Lonnie Oliver, the Deputy Superintendent for Facilities Management; Captain Nathan Goss; Sergeant Kenneth Crum; and Sergeant William Henry.

In the complaint, which he later amended, Peay claimed that: (1) defendants Fisher, Whitesel, Oliver, and Goss failed to protect him from being assaulted by two fellow inmates on April 29, 2014; (2) prison staff members tampered with his mail in retaliation for his assertion that he is innocent of the crime for which he is incarcerated; (3) all defendants allowed his Nike sneakers and a box of oatmeal to be stolen from his cell, and allowed his food to be poisoned with herpes; (4) defendant Goss confiscated his Walkman in retaliation for his having implicated staff in a fraudulent misconduct charge against him; (5) defendant Henry, who was "in charge of the housing unit," failed to protect him from being poisoned with herpes; (6) the prison failed to have a policy about cell-cleaning; (7) defendants Fisher, Whitesel, and Oliver refused to remove his "Z-code

2

status" even though they knew he was claustrophobic; and (8) he was wrongfully found guilty of fighting with an inmate in a misconduct. Peay sought compensatory and punitive damages as well as injunctive relief.

Following discovery, the defendants moved for summary judgment on multiple grounds, including that Peay had failed to exhaust administrative remedies with respect to most of his claims; that the defendants were entitled to qualified immunity; and that Peay had failed to create a genuine issue for trial on his failure-to-protect, retaliation, conditions-of-confinement, and herpes-related claims. The District Court carefully considered the defendants' arguments and Peay's responses thereto, and, by order entered March 24, 2017, granted the defendants' motion. Peay appealed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over an order granting summary judgment. DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Kaucher v. County of Bucks, 455 F.3d 418, 422–23 (3d Cir. 2006). To defeat the defendants' motion for summary judgment, Peay was required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing a genuine issue for trial. See Fed. R. Civ. P. 56(c) (setting forth requirements for supporting or opposing party's assertion that

3

a fact cannot be or is genuinely disputed). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.

We have reviewed the record and will affirm the District Court's judgment primarily for the reasons explained by that court in its thorough opinion. We will briefly address some of Peay's arguments on appeal.

First, insofar as Peay argues in his brief to this Court that he is innocent of the crime for which he is currently imprisoned, he may not challenge the validity of his conviction indirectly through § 1983. See Grier v. Klem, 591 F.3d 672, 677 (3d Cir. 2010) (explaining that, under Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), "a prisoner does not have a cognizable § 1983 claim, even if he or she does not seek relief from the fact or duration of confinement, for alleged unconstitutional conduct that would invalidate his or her underlying sentence or conviction unless that conviction has already been called into question").

Second, we agree with the District Court that the defendants were entitled to judgment on all of Peay's claims based on his contention that prison employees poisoned him with herpes. As the District Court explained, the medical records produced by the

4

prison include a lab report revealing that Peay tested negative for the herpes simplex virus on June 17, 2014.  Peay did not produce any medical evidence to the contrary.[1]

We also agree with the District Court that the defendants were entitled to summary judgment on Peay's Eighth-Amendment failure-to-protect claim.  Peay alleged that on April 29, 2014, prison staff directed two of his fellow inmates—Reyes and Wilson—to attack him.  He claimed that defendants Fisher, Whitesel, Oliver, and Goss were responsible for the attack because he had previously advised them that prison staff were "sicking" inmates on him.  To succeed on this claim, Peay would be required to demonstrate that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

In support of their motion for summary judgment, the defendants submitted the record of Peay's grievance concerning this incident.  At the final stage of the administrative process, the Chief Grievance Officer found that, following an investigation by the Security Office Staff and the Office of Special Investigations and Intelligence, no evidence supported Peay's theory that prison staff were behind the inmate assault.  The Chief Grievance Officer explained that the prison staff members who were implicated in

---

[1] As the District Court accurately described, the lab results and progress notes that Peay submitted do not reflect a positive diagnosis for the herpes simplex virus.

5

the incident denied Peay's accusations, and Wilson and Reyes stated that they attacked Peay because he "had been coming at them for a month, [and they had] had enough." Given that Peay did not present any evidence in the District Court to create a genuine issue for trial as to whether prison staff ordered the assault, he could not show that the defendants had reason to know that he was in danger from these two inmates, or that they were deliberately indifferent toward this danger. Therefore, the District Court properly granted summary judgment in the defendants' favor.

We also agree with the District Court that the defendants were entitled to summary judgment on Peay's claim that defendants Fisher, Whitesel, and Oliver refused to remove his Z-code (single-cell) status because they knew that he was claustrophobic and wanted him to suffer.[2] The District Court reasonably construed Peay's allegations as alleging an Eighth Amendment violation. To succeed on this claim, Peay would be required to demonstrate that: (1) objectively, the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) subjectively, the prison officials acted with "deliberate indifference." Farmer, 511 U.S. at 834 (internal quotation marks omitted). Where conditions are not "cruel and unusual" but merely "restrictive and even harsh," they do not violate the Eighth Amendment, but rather "are

---

[2] Pursuant to Section 5.C.1.d. of the Pennsylvania Department of Corrections Policy Statement No. 11.2.1, staff members should consider Program Code "Z" housing classification for an inmate who "has a documented history of aggressive or predatory behavior towards cell partners or who staff have reason to believe would exhibit assaultive or predatory behavior towards cell partners."

6

part of the penalty that criminal offenders pay for their offenses against society."
Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

In support of their motion for summary judgment on this claim, the defendants submitted evidence indicating that Peay requested to have his Z-Code status removed in March 2014 because he was claustrophobic and no longer wanted to be in a cell by himself. At that time, pursuant to the Reception and Classification Procedures Manual, a Corrections Counselor reviewed Peay's file and found that he had a significant misconduct history—which included misconducts for assaulting staff and other inmates. The Corrections Counselor also obtained recommendations from prison staff who all voted to maintain Peay's Z Code, noting that he was "highly assaultive." Peay did not provide any evidence to support his theory that prison officials maintained his Z Code in order to cause him to suffer. Because Peay did not present any other evidence that his cell assignment placed him at substantial risk of serious harm or that the defendants were deliberately indifferent to his health or safety, he failed to meet his burden to survive summary judgment on this Eighth Amendment claim. See Farmer, 511 U.S. at 834; see also Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992) (explaining that placing an inmate in restricted housing does not violate the Eighth Amendment "as long as the conditions of confinement are not foul, inhuman or totally without penological justification").

Peay's remaining arguments on appeal concern claims that the District Court could not consider because they were not exhausted. As the District Court explained,

7

Peay was required to pursue all avenues of relief available within the prison's grievance system before filing this federal civil rights suit. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). The record reflects that Peay filed grievances within the prison system addressing many of the complaints he raises here, including his claims relating to the handling of his legal mail, the theft of his Walkman and sneakers, the herpes poisoning, and the April 29, 2014 altercation. For the reasons set forth by the District Court, however, Peay failed to fully complete the grievance process, or failed to identify the named defendants, with respect to these claims. Furthermore, he did not file any grievances at all relating to his claim that a box of oatmeal was stolen from his cell or his claim regarding the cleaning of cells at SCI-Smithfield. Because § 1997e mandates "proper exhaustion," the District Court correctly concluded that Peay failed to satisfy the mandatory exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006); see also Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004).

IV.

Accordingly, we will affirm the District Court's judgment.

8